UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| Justin G.,[1] Plaintiff, v. FRANK BISIGNANO, Commissioner of Social Security, Defendant. | ) | Civil Action No. 25-30207-JCB |

MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO REVERSE AND REMAND AND DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION
[Docket Nos. 18, 24]

October 5, 2026

Boal, M.J.

This is an action for judicial review of a final decision by Frank Bisignano, the Commissioner of the Social Security Administration ("Commissioner"), denying Plaintiff's application for Supplemental Security Income benefits ("SSI"). Plaintiff asserts that the January 15, 2025, decision of an administrative law judge ("ALJ") is in error and moves to reverse and remand the decision for further proceedings. Docket No. 18. The Commissioner, in turn, has moved for an order affirming his decision. Docket No. 24. For the following reasons, this Court

[1] Plaintiff's name is partially redacted in accordance with Rule 5.2(c)(2)(B) of the Federal Rules of Civil Procedure and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

grants in part the Plaintiff's motion and denies the Commissioner's motion.[2] The case is remanded for further proceedings consistent with this opinion.

I. FACTS AND PROCEDURAL HISTORY

A. Procedural History

On December 15, 2022, Plaintiff applied for benefits under Title XVI of the Social Security Act ("SSA") alleging disability since June 30, 2019. Administrative Record ("AR") 154. After his claim was denied initially and on reconsideration, on December 19, 2024, ALJ Stephen M. Syzmczak held a telephonic hearing at which an impartial vocational expert and Plaintiff, represented by counsel, appeared and testified. AR 92, 98, 41-73. At that time, Plaintiff amended his onset date to December 14, 2022. AR 47-48. On January 15, 2025, the ALJ found that Plaintiff was not disabled from the alleged onset date through the date of the decision. AR 35. The Appeals Council denied Plaintiff's request for review, AR 3-5, making ALJ Syzmczak's determination the Commissioner's final decision. See 42 U.S.C. § 405(g).

Plaintiff filed this action on December 15, 2025. Docket No. 1. On May 14, 2026, Plaintiff filed a motion to reverse and remand. Docket No. 18. The government filed a motion for an order affirming the Commissioner's decision on June 16, 2026. Docket No. 24. Plaintiff filed a reply on June 30, 2026, and the Commissioner filed a sur-reply on July 7, 2026. Docket Nos. 26, 27.

B. Medical Evidence

1. Mental Health Treatment

Plaintiff has a history of substance abuse, including fentanyl, heroin, and cocaine, starting at age 16. AR 1014. He received treatment at SSTAR, an addiction and rehabilitation center,

[2] On April 16, 2026, the parties consented to the jurisdiction of the undersigned for all purposes. Docket No. 15.

where he received monthly injections of Sublocade with supplemental daily films of Suboxone, from at least December 2020 through September 2024. AR 422-638, 951, 958-1008. The treatment notes indicate that Plaintiff was stable on that medication regimen with no cravings or illicit use. See, e.g., AR 486, 494, 524, 574.

On July 22, 2024, Plaintiff had a mental treatment intake appointment at Northeast Health Services. AR 1014-1020. He reported having been diagnosed with bipolar disorder in 2017 and that he had taken medication for about a year after the diagnosis. AR 1014. He said that he had recently been experiencing insomnia and worsening mood swings and described his current mood as depressed, with no interest or motivation. Id. He also reported being sober for six years. On examination, Plaintiff's mood was sad/depressed and he had a flat/blunted affect; however, he had appropriate dress, adequate grooming, cooperative behavior, good eye contact, logical thought process, no abnormal thought content, intact insight/judgment, and intact recent memory. AR 1017. He scored 13 on the PHQ-9, indicating moderate depression, and 13 on the GAD-7, indicating moderate anxiety. AR 1017.

At a follow up appointment on August 30, 2024, Plaintiff reported having serious problems with work or social function and said that he experienced several of these symptoms at once. AR 1021. He also reported severe stress due to occupational and health concerns and mild stress due to family concerns. Id. He reported no stress in the areas of friends, relationships, educational, economic, housing, or legal concerns. Id.

2. Knee Condition

On June 2, 2022, the Plaintiff saw Joseph Timothy Lifrak, M.D. and reported a two- to three-month history of increased pain and swelling of his left knee with activities such as yard work. AR 269. He reported having a right knee arthroscopy with chondroplasty of the trochlea

medial femoral condyle and removal of loose bodies two years prior. Id. On examination, he had normal gait, neutral alignment of the left knee, good quadriceps bulk and tone, full range of motion, no tenderness, stable stress testing, and no pain with range of motion of the hip. AR 271. Dr. Lifrak performed an aspiration and injection of the left knee. Id. He also prescribed meloxicam 15 mg to be taken once a day. Id.

On December 22, 2022, Plaintiff saw Dr. Lifrak for a follow-up. AR 296. Plaintiff reported feeling okay until a few weeks prior to the appointment. Id. His left knee had started to swell and be painful. Id. Dr. Lifrak sent Plaintiff for an MRI, which showed degenerative changes of the patella and medial compartment with loose fragments of cartilage. AR 292.

On February 13, 2023, Dr. Lifrak performed a left knee arthroscopy with chondroplasty of the trochlea, medial femoral condyle and removal of multiple loose bodies, the biggest of which was approximately 8 mm in size. AR 288. At the 10-day follow-up appointment, Plaintiff reported feeling better than before surgery. AR 284. Dr. Lifrak noted that Plaintiff was doing well postoperatively. Id.

Plaintiff was next seen on August 30, 2024, when he reported increasing discomfort in both knees. AR 707. He stated that the right knee bothered him more than the left and that he got "crunching and popping" in his knees. Id. Plaintiff inquired about an injection but Dr. Lifrak told him that would not help with the crunching and popping. AR 710. Plaintiff decided to hold off on the injection. Id. Dr. Lifrak refilled Plaintiff's prescriptions for Meloxican and Tylenol. Id. He also planned on seeing Plaintiff in eight weeks and if he was having no relief, he would then plan on a cortisone injection. Id. If Plaintiff was doing well then, the appointment would be cancelled. Id. There are no further records of treatment for Plaintiff's knees in the administrative record.

C. Opinion Evidence

On November 11, 2023, the Plaintiff was referred for a mental status evaluation by the Disability Determination Service Division of the Massachusetts Rehabilitative Commission. AR 642-645. Nicole Brundige, Ph.D., assessed that Plaintiff's symptoms were consistent with persistent depressive disorder, late onset, with anxious distress, moderate. AR 644. She noted that Plaintiff was easily distracted during the evaluation. AR 645. Although his concentration was adequate to sustain attention and respond to questions, his performance was inadequate when required to apply more focused attention to repeat five numbers in forward order and to register and recall five words after a short delay, suggesting well below average working memory. Id. She stated that:

> Although Justin was highly motivated for this evaluation, he did not perform well on several mental status tasks (MOCA = 17/30). The combination of depressed mood with related anxious distress suggest that he may experience challenges in assessed areas of functioning. In view of his collective issues, it is likely that his work capacity would be extremely limited, and that he would require multiple, frequent breaks to remain on task. More specifically, Justin may have difficulty maintaining adaptive, consistent social interactions in a work setting, given his endorsement of related problems. Furthermore, he would likely have frequent troubles with carrying out and remembering complex instructions, persisting in work related activity at a productive pace, and coping with normal pressures of work settings, such that his difficulties may significantly interfere with work performance. It is notable that, although he pays his bills, he did not appear capable of handling monthly benefits which may be payable.

Id.

State agency medical consultant Dr. Ilia Coka, at the initial level of review, assessed that the Plaintiff was capable of a light exertional capacity, except that he was limited to occasionally lift 20 pounds and frequently lift 10 pounds; he could stand and/or walk for 6 hours and sit 6 hours in an 8-hour workday and is unlimited to push and/or pull with his four extremities; and he should never climb ladders, ropes and/or scaffolds and should never kneel and/or crawl. AR 78.

State agency medical consultant Dr. Marcia Lipski, at the reconsideration level of review, assessed that the Plaintiff was capable of a light exertional capacity with standing and walking reduced to four hours, and the same postural restriction assessed at the initial level. AR 87-88.

Both Therese Harris, PhD and Jan Jacobson, PhD opined that Plaintiff's ability to understand and remember detailed instructions, to carry out detailed instructions, to maintain attention and concentration for extended periods, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to perform at a consistent pace were moderately limited but he remained able to maintain focus, pace, and persistence for simple tasks for 2-hour periods over an 8-hour workday within a normal work schedule. AR 79, 86. They also opined that Plaintiff's ability to accept instructions and respond appropriately to criticism from supervisors and to respond appropriately to changes in the work setting were moderately limited but that he remained able to interact with the public, manage appropriate superficial interpersonal interactions in the workplace, and accept reasonable supervision. AR 79-80, 86. Finally, they assessed that Plaintiff would have difficulty with rapid, unexpected, or demanding work changes and pressures, but would be able to recognize normal hazards, adapt to minor changes in work demands, and adequately manage simple and routine work-related stress/pressures. AR 80, 86.

D. Hearing Testimony

Plaintiff was 39 years old at the time of the hearing. AR 43. Plaintiff testified to chronic widespread pain symptoms. He noted constant muscle, lower back, and knee pain that radiates throughout his body. AR 50. He also testified to migraines every two days. AR 52. In addition, he reported insomnia. AR 59.

According to Plaintiff, he can only sit or stand for ten minutes at a time before needing to

switch positions because of knee, lower back, and stomach pain; can only walk ten to fifteen minutes at a time with the need for breaks; has problems with stair climbing; trouble lifting even a gallon of milk without the use of two hands; and has pain with overhead reaching with his shoulder popping out. AR 54, 55, 56. He also testified to GI issues characterized by sudden bowel urgency with occasional incontinence and the need to use the bathroom six times per day. AR 51.

Plaintiff lives with his parents. AR 60-61. He performs no chores and does not leave the house. AR 60-61. His mother prepares all his meals. AR 61. He is mostly in bed all day due to pain and low energy. AR 59, 60. Plaintiff noted taking Tylenol for pain with no relief. AR 53. He did not take other pain medications due to his history of drug abuse. Id. Plaintiff testified that he had been sober since 2016 and continues to receive monthly Sublocade injections and supplemental Suboxone 8 mg a day. AR 54.

## II. STANDARD OF REVIEW

A court may not disturb the Commissioner's decision if it is grounded in substantial evidence. See 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind accepts as adequate to support a conclusion. Biestek v. Berryhill, 587 U.S. 97, 103 (2019) (citations omitted). The Supreme Court has defined substantial evidence as "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). Thus, even if the administrative record could support multiple conclusions, a court must uphold the Commissioner's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (citation and internal quotation marks omitted).

A denial of benefits, however, will not be upheld if there has been an error of law in the

evaluation of a particular claim. See Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (citation omitted). The ALJ's decision is "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). However, if a court reverses the Commissioner's decision but there is no clear entitlement to benefits on the basis of the record before the court, the court must remand for additional proceedings. Seavey v. Barnhart, 276 F.3d 1, 11-12 (1st Cir. 2001) ("When an agency has not considered all relevant factors in taking action, or has provided insufficient explanation for its action, the reviewing court should ordinarily remand the case to the agency.") (citation omitted). In the end, the court maintains the power, in appropriate circumstances, "to enter . . . a judgment affirming, modifying, or reversing the [Commissioner's decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## III. DISCUSSION

### A. Disability Standard And The Commissioner's Decision

The Social Security Act (the "Act") defines disability, in part, as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is considered disabled under the Act

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for her, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). See generally Bowen v. Yuckert, 482 U.S. 137, 146-49 (1987).

In determining disability, the Commissioner follows the five-step protocol described by the First Circuit as follows:

> First, is the claimant currently employed? If he is, the claimant is automatically considered not disabled.
>
> Second, does the claimant have a severe impairment? A "severe impairment" means an impairment "which significantly limits his or her physical or mental capacity to perform basic work-related functions." If the claimant does not have an impairment of at least this degree of severity, he is automatically considered not disabled.
>
> Third, does the claimant have an impairment equivalent to a specific list of impairments contained in the regulations' Appendix 1? If the claimant has an impairment of so serious a degree of severity, the claimant is automatically found disabled.
>
> . . . .
>
> Fourth, does the claimant's impairment prevent him from performing work of the sort he has done in the past? If not, he is not disabled. If so, the agency asks the fifth question.
>
> Fifth, does the claimant's impairment prevent him from performing other work of the sort found in the economy? If so, he is disabled; if not, he is not disabled.

Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

The ALJ concluded, following the Commissioner's five-step sequential disability evaluation, that Plaintiff was not disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 14, 2022, the application date. AR 22.

At step two, the ALJ found that Plaintiff had the following severe impairments: bilateral knee degenerative joint disease, bilateral carpal tunnel syndrome, irritable bowel syndrome (IBS), obesity, depressive disorder, bipolar disorder, anxiety disorder with panic attacks, and substance abuse disorder. Id.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, and 404.1526). Id.

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to

perform light work as defined in 20 C.F.R. 416.967(b) "except occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently balance as defined in the SCO and stoop; never kneel; frequently crouch; and never crawl; frequent bilateral handling, pushing, pulling, and fine finger manipulation; should avoid all exposure to workplace hazards such as unprotected heights and moving machinery; is able to understand, remember, and carry out simple instructions, is able to tolerate frequent interactions with coworkers and/or supervisors; no interactions with the general public; can deal with occasional changes in a routine work setting; and requires access to an on-site bathroom." AR 24-25.

At step five, the ALJ concluded that Plaintiff was not disabled because he could perform jobs existing in significant numbers in the national economy. AR 34-35.

B. Plaintiff's Challenges To The ALJ's Decision

Plaintiff argues that the ALJ erred in three ways. First, he erred by substituting his lay opinion for that of the state agency medical consultants. Docket No. 19 at 5-8. Second, the ALJ erred by failing to account for Plaintiff's need for only superficial interaction consistent with the persuasive prior administrative medical findings of the state agency psychological consultants. Id. at 8-10. Finally, he argues that the ALJ's evaluation of Dr. Brundige's opinion does not comply with the regulations and is not supported by substantial evidence. Id. at 10-15. This Court agrees with Plaintiff only on the third point.

1. Any Error By The ALJ In Substituting His Lay Opinion For That Of State Agency Consultants Is Harmless

At the initial level, Dr. Coka found that Plaintiff had the functional residual capacity to perform light work including six hours of standing and walking and occasional balancing, stooping, and crouching. AR 77-78. Upon reconsideration, Dr. Lipski found that Plaintiff could perform only four hours of standing and walking per day and occasionally balance, stoop, and

crawl. AR 88.

The ALJ found Dr. Coka's opinion more persuasive "as the light exertional capacity without a reduction in standing and walking because it is more consistent with the longitudinal record and examinations showing normal gait outlined above." AR 31. The ALJ, however, rejected both consultant's postural limitations of only occasional balancing, stooping, and crouching because "the record instead supports a less restrictive residual functional capacity in these areas." Id. The ALJ instead found that the Plaintiff could frequently balance, stoop, and crouch. AR 24.

ALJs must consider several factors in determining the persuasiveness of medical opinions: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors. 20 C.F.R. § 404.1520(c). "The most important factors to be considered when the Commissioner evaluates persuasiveness are supportability and consistency; these are usually the only factors the ALJ is required to articulate." Devine v. Kijakazi, 627 F.Supp.3d 10, 23 (D. Mass. 2022) (citation omitted). Here, the ALJ sufficiently explained his reasons for finding Dr. Coka's opinion more persuasive. As referenced above, he explained that Dr. Coka's opinion was "more consistent with the longitudinal record and examinations showing normal gait outlined above." AR 31. Earlier in his decision, the ALJ had noted that Plaintiff's "[e]xaminations have shown normal gait, not ligament instability, full range of motion, and no indication of acute motor or neurological deficits." AR 29. Contrary to the Plaintiff's arguments, the ALJ did not substitute his lay opinion for that of the state agency consultants when his findings in this respect were consistent with a medical opinion in the record.

In rejecting both state agency consultants' postural limitations, however, the ALJ erred. The ALJ explained that "treatment records detail normal gait, no indication of ligament

instability in the legs, and no objective findings or associated diagnoses that would warrant a limitation in these postural maneuvers greater than frequent." AR 31. "As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (citations omitted).

Where the claimant can perform the jobs identified by the vocational expert even with the limitations omitted by the ALJ, any error in that respect is harmless. See, e.g., Cinelli v. O'Malley, No. 24-cv-10613-DJC, 2025 WL 641402, at *9 (D. Mass. Feb. 27, 2025) ("It is not a reversible error . . . to omit limitations when the jobs recommended by the VE and relied upon by the ALJ do not involve any conditions related to the omitted limitations."); Sanchez v. Berryhill, 336 F.Supp.3d 174, 179 (W.D.N.Y. 2018) (assuming ALJ erred in failing to incorporate moderate limitations with respect to complex tasks and decision making into his RFC finding, such error was harmless because the jobs identified by the vocational expert can be performed by individuals with moderate mental deficiencies). Even if the Plaintiff is limited to occasional crouching, balancing, and stopping, none of the jobs identified by the vocational expert requires the ability to perform those activities more than occasionally. See AR 67; DOT 559.687-074, 1991 WL 683797 (packager – occasional stopping; crouching and balancing "not present"); DOT 727.685-010, 1991 WL 679660 (inspector – crouching, balancing, stooping, "not present"); DOT 706.684-022, 1991 WL 679050 (bench assembler – crouching, balancing, stopping, "not present"). Accordingly, the ALJ's error is harmless.

2. Any Error Regarding The Social Interaction Limitations Is Harmless

Both state agency consultants found that Plaintiff had moderate limitations with social interactions but that he "remains able to interact with the public, manage appropriate superficial

interactions in the workplace, and accept reasonable supervision." AR 76, 80, 86-87. The ALJ found that those opinions "remain an accurate reflection of the claimant's abilities and limitations with respect to these areas of functioning." AR 32. However, he "made a slight modification" to these limitations "for the purposes of clarity and consistency with moderate limitations that have been assessed." Id. Specifically,

> The undersigned clarified and more specifically defined the limitation in interacting with others. The undersigned articulated frequent interactions with coworkers and supervisors and no interactions with the general public for better specificity in assessing the moderate limitation in this area and consistent with the anxiety in social settings and difficulty in interpersonal interactions noted in the mental health treatment records and reported by the claimant while balancing appropriate mood and behavior, strong family relationships, and regularly talking to friends noted in the longitudinal record.

Id. Plaintiff argues that the ALJ's modification does not adequately capture the state agency psychologists' limitation to superficial interactions. See Docket No. 19 at 8-9. Plaintiff points out that the ALJ failed to explain how "superficial interpersonal interactions" are accommodated by a limitation to frequent interactions with coworkers and supervisors and no interactions with the public. Id. In addition, he argues that the qualifiers "superficial" and "frequent" address different facets of personal interaction. Id.

Any error in this respect, however, was harmless. Each of the jobs identified by the DOT codes given by the Vocational Expert had a people rating of 8, indicating the lowest level of human interaction in the range of occupations, and had a job description describing the level of interpersonal interaction as "not significant."[3] See Lagace v. Saul, 537 F.Supp.3d 141, 154 (D.

---

[3] The DOT rates the amount of interaction with people on a scale of 0-8; 8 represents the lowest level of human interaction in the labor force. At this ranking, the individual takes instructions "[a]ttending to the work assignment instructions or orders of supervisor" with "[n]o immediate response required unless clarification of instructions or orders is needed." Lagace, 537

Mass. 2021); DOT 559.687-074, 1991 WL 683797; DOT 727.685-010, 1991 WL 679660; DOT 706.684-022, 1991 WL 679050. As such, those occupations were not likely to require more than a "superficial" interaction with others. Any error, therefore, does not require remand.

3. The ALJ's Finding That Dr. Brundige's Opinion Is Not Persuasive Is Not Supported By Substantial Evidence

Finally, the Plaintiff challenges the ALJ's finding that Dr. Brundige's opinion was not persuasive. Docket No. 19 at 10-15. As referenced above, the ALJ is required to evaluate certain factors when assessing the persuasiveness of medical opinions, of which supportability and consistency are the most important factors and the only two that the ALJ is required to articulate. See Devine, 627 F.Supp.3d at 23.

The ALJ explained that, while Dr. Brundige's report was "comprehensive" and "informative regarding the claimant's alleged mental impairments," her opinions were not persuasive because they were based largely on the Plaintiff's subjective complaints. AR 32. Contrary to the ALJ's statements, however, Dr. Brundige's opinions do not appear to be based largely on Plaintiff's subjective complaints. Rather, Dr. Brundige's opinions appear to be based and supported by her examination findings, including the results of a MoCA test.[4] See AR 642-645. Plaintiff scored 17/30 in the MoCA test, indicating moderate cognitive impairment. In

---

F.Supp.3d at 154 n.2 (citing DOT, App. B-Explanation of Data, People, & Things, 1991 WL 688701).

[4] The MoCA is a 30-question test "that helps healthcare professionals detect cognitive impairments." Israel D. v. Kijakazi, No. 19-cv-07666, 2022 WL 2046283, at *4 n.3 (N.D. Ill. June 7, 2022) (citing MoCA website, https://www.mocatest.org (last visited May 25, 2022)). A score of 10-17 indicates a "moderate cognitive impairment" but "research for these severity ranges has not been established yet." Id.

addition to the MoCA test, Plaintiff "scored a 6 on the Patient Health Questionnaire (PHQ-9),[5] indicating mild depression, and a score of 7 on the Generalized Anxiety Disorder screener (GAD-7),[6] suggesting frequent symptoms congruent with an anxiety disorder." AR 644.

The ALJ also stated that the "longitudinal record and other mental status examinations are not consistent with the same deficits in memory and concentration and instead detail largely benign examinations." AR 32. In July 2024, however, the Plaintiff had a sad/depressed mood and flat/blunted affect. AR 1017. He also scored 13 on the PHQ-9, indicating moderate depression, and 13 on the GAD-7, indicating moderate anxiety. Id. Other records that the ALJ cited as showing benign mental status examinations involve follow up appointments for his Sublocade treatments, or appointments for his physical ailments, which are situations in which the providers may not be focused on a thorough psychological examination. See, e.g., AR 630, 709, 993.

In addition, the ALJ described Dr. Brundige's opinion as "broad and vague where she notes areas where the claimant 'may' be limited or will likely have difficulty without further defining or quantifying the extent of limitation nor did she articulate a specific function-by-function assessment of abilities and limitations in work-related vocational terms." AR 32-33. Dr. Brundige, however, provided functional limitations, including the need for "multiple,

---

[5] The PHQ-9 is a questionnaire for making criteria-based diagnoses of depressive and other mental disorders commonly encountered in primary care. Dianna R. v. Kijakazi, No. 20cv1664-MSB, 2022 WL 4798124, at *4 n.5 (S.D. Cal. Sept. 30, 2022) (citation omitted). PHQ-9 scores are classified as follows: 0-4 indicates minimal depression; 5-9 indicates mild depression; 10-14 indicates moderate depression; 15-19 indicates moderately severe depression; and 20-27 indicates severe depression. Id. (citations omitted).

[6] GAD-7 is the Generalized Anxiety Disorder Assessment. Id. at n.6 (citation omitted). Scores 15 and above indicate severe anxiety symptoms, 10-14 indicate moderate symptoms, and 5-9 indicate mild symptoms. Id. (citation omitted).

frequent breaks," "difficulty maintaining adaptive, consistent social interactions in a work setting," "frequent troubles with carrying out and remembering complex instructions," and difficulties in maintaining a "productive pace." AR 645. Accordingly, this Court finds that the weight given to Dr. Brundige's opinion is not supported by substantial evidence.

## IV. ORDER

For the foregoing reasons, this Court grants in part the Plaintiff's motion to reverse and remand and denies the Commissioner's motion to affirm his decision. This case is remanded for further proceedings consistent with this opinion.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge